UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KEYBANK NATIONAL ASSOCIATION,

              Plaintiff,

      v.

MOSES LAKE INDUSTRIES, INC.,
a Washington Corporation,

              Defendant.

NO. CV-09-162-EFS

**ORDER DENYING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT**

Before the Court, without oral argument, is Defendant Moses Lake Industries Inc.'s Motion for Partial Summary Judgment. (Ct. Rec. 23.) After reviewing the submitted materials and relevant authority, the Court finds the July 2008 contract between the parties is enforceable, and therefore denies Defendant's Motion.

**I. Background**[1]

In October 2001, Plaintiff Keybank National Association and Defendant entered into a contract that set forth binding terms for future

---

[1] In a motion for summary judgment, the facts are set forth in a light most favorable to the nonmoving party – here, that is Plaintiff. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

ORDER * 1

interest-rate-swap transactions between them.  In November 2001, the parties entered into their first interest-rate-swap transaction.  The parties agreed that New York law would govern this transaction without regard to choice-of-law doctrine.  (Ct. Rec. 36 at 5.)  This is a standard provision in the International Swap Dealers Association, Inc. (hereafter "ISDA") Master Agreement.  The ISDA establishes industry guidelines for the over-the-counter derivatives market.  Plaintiff always uses the ISDA Master Agreement to memorialize deals such as the transaction at issue.  *Id.* at 7.

The first transaction between the parties went smoothly.  Plaintiff extended Defendant a $4,000,000.00 letter of credit and Defendant began making timely payments according to an agreed upon repayment schedule.

In early June 2008, the parties discussed entering into a second interest-rate-swap transaction — this time for $7,000,000.00.  The term of the contract was allegedly from July 1, 2008, to July 1, 2018.  The parties' stories differ as to this transaction.  Plaintiff claims that the parties agreed upon all essential terms and orally consummated the transaction in late June 2008.[2]

On June 12, 2008, Kristin Tofani, an employee of Defendant, sent two emails to Thomas Sortomme of MLI.  After receiving approval from Executive Vice President Michael Harvey, Ms. Tofani sent the first e-mail at 8:15 a.m., saying "Please lock the rate on our loan this morning. Based on our conversation please lock our entire loan amount." (Ct. Rec. 39 Ex. A.)  At 8:56 a.m. the same day, Ms. Tofani sent a second e-mail

---

[2] Defendant claims that the parties never consummated the transaction because details were still being negotiated.

ORDER * 2

to Mr. Sortomme, in which she said, "To confirm our conversation, Key Bank is locking our entire $7,000,000 loan at 7.0% for 10 years for the period 7/1/08 through 7/1/2018." *Id.* This was the only writing signed by any employee of Defendant in connection with the 2008 contract.

Alleged repayment dates for the June 2008 interest-rate-swap transaction came and passed. Defendant did not pay. Unable to obtain payment, Plaintiff filed this action, claiming that Defendant is $95,111.19 in arrears on the June 2008 transaction repayment schedule. Defendant answered and asserted four (4) counterclaims. Defendant now brings this motion, opposed by Plaintiff, for summary judgment on Plaintiff's claim for breach of contract, and for attorney's fees and costs.

## II. Discussion

**A.   Summary Judgment Standard**

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56],

ORDER * 3

the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**B.   Choice of Law**

Defendant argues that it is entitled to summary judgment because the 2008 oral agreement was not memorialized in writing and was therefore unenforceable.  If that is the case, as a matter of law Defendant could not have breached that agreement.  According to Defendant, even though the contract between the parties stipulated that New York law was to govern their contractual rights, the appropriate law to apply is Washington's.  (Ct. Rec. 26 at 6-11.)  Under the Washington version of the statute of frauds, certain contracts must be in a writing signed by the party to be charged in order to be enforceable.  Among these contracts are contracts that, like the one in this case, are not to be performed within one (1) year from their making.  RCW 19.36.010.

ORDER * 4

Plaintiff asserts that New York law applies because of the contract's choice-of-law provision. Moreover, Plaintiff argues there is no conflict of laws because, under either Washington or New York law, this contract is not invalid because of the statute of frauds. (Ct. Rec. 35 at 1-2.)

A federal court sitting in a diversity action must apply the choice-of-law rules of the forum state. *See Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009). Here, Washington choice-of-law rules apply.

**1.    Existence of Conflict of Law**

The first step in resolving a contractual choice-of-law dispute is to determine if there is an actual conflict between the laws of the two states on the disputed issue. *Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 692 (2007), (quoting *Seizer v. Sessions*, 132 Wn.2d 642, 648 (1997)).

Plaintiff asserts that there is no conflict because the oral contract is enforceable under either Washington or New York law. (Ct. Rec. 35 at 5-6.) The parties agree that the contract would be valid under New York law because New York law excepts insurance-swap contracts from the statute of frauds. *See* N.Y. GEN. OBLIG. LAW § 5-701(2)(f). Plaintiff claims the contract is valid under Washington law as well because Washington law requires an oral agreement to be supported only by "some memorandum. . . signed by the party to be charged." RCW 19.36.010. According to Plaintiff, Ms. Tofani's confirmatory e-mail is sufficient to memorialize the contract.

Defendant argues that a confirmatory memorandum must contain all the material terms of an oral contract in order for a contract to be taken out of the statute of frauds. (Ct. Rec. 26 at 3-4.) According to

Defendant, most of the material terms to an insurance-swap contract were missing from Ms. Tofani's e-mail.

The Court finds as a matter of law that the result under either Washington or New York law is identical.  Under either state's law the contract is enforceable, so there is no conflict of law.  Defendant cites *Bharat Overseas, Ltd. v. Dulien Steel Prods., Inc.*, 51 Wn.2d 685 (1958) for the proposition that Washington law requires a written confirmation to contain all material terms in order to make the contract enforceable.  But this case says that only the subject matter of the contract, the parties, the promise underlying the contract, the terms, and the consideration are material terms.  *Id.* at 687.  Viewing the evidence in the light most favorable to Plaintiff, Ms. Tofani's e-mail included all these terms, and so it takes the contract out of the statute of frauds under Washington law.  (Ct. Rec. 39 Ex. A at 5.)  Accordingly, there is no conflict of law, and the contract is enforceable.

**2.  Choice of Law**

If the confirmatory memo is insufficient to take the contract out of the statute of frauds under Washington law, the Court must perform a choice-of-law analysis.  Even in that case, the Court determines as a matter of law that New York law applies.  The Washington Supreme Court adopted RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 to resolve conflict-of-laws issues when the parties have made an express contractual choice of law, as happened here.  *Erwin*, 161 Wn.2d at 694.  Section 187 contains two (2) pertinent sub-sections that determine whether a contractual choice-of-law provision is effective:  § 187(1) and § 187(2)(a).

### a.   § 187(1)

Under section 187(1), "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." § 187(1). A comment clarifies that if the parties could have determined the disputed issue by contract under the laws of the state whose law would be applied under section 188,[3] the parties' choice of law will be honored under this sub-section.  § 187 cmt. c.

The dispute in this motion is whether the contract that Defendant allegedly breached could be made orally.  Washington law would apply under section 188 because Washington has the most significant relationship to this contract by virtue of the contract's negotiation and planned course of performance.  Under Washington law, the contract in this case must be written to be enforceable, so the parties could not have contracted to make it valid if it were exclusively oral.  Therefore, this sub-section does not enable the Court to honor the parties' choice of New York law.

### b.   § 187(2)(a)

Under section 187(2)(a), the parties' contractual choice of law is valid even if it does not apply under sub-section (1), unless "the chosen state has no substantial relationship to the parties or the transaction

---

[3] Under section 188, which applies in the absence of express contractual choice of law, the law of the state that has the most significant relationship to the contract applies.

ORDER * 7

*and* there is no other reasonable basis for the parties' choice." (emphasis added).

Defendant argues that New York has no relationship whatsoever to the parties or the transaction because Plaintiff is an Ohio citizen, Defendant is a Washington citizen, and the contract was negotiated and was to be performed almost exclusively in Washington. Because New York has no substantial relationship to the contract, Defendant asserts New York law should not apply.

In support of its position, Defendant cites a Utah case, *Prows v. Pinpoint Retail Sys., Inc.*, 868 P.2d 809 (Utah 1993), and a case from the Western District of Kentucky, *Davis v. Siemens Med. Solutions USA, Inc.*, 399 F. Supp. 2d 785 (W.D. Ky. 2005). Clarifying comment d to section 187, *Prows* held that, when only one state has any relationship to a contract, that state's law must be used, even if another state's law would be reasonable. 868 P.2d at 811. The court in *Davis* declined to apply the parties' contractually chosen law because the parties and the transaction had insufficient contacts with the state and it would have been unreasonable to do so. 399 F. Supp. 2d at 791.

The Court begins by noting that these cases are merely persuasive authority and are not binding here. Moreover, the Court finds these cases inapposite and unpersuasive as applied to this context.

The situation here is different from *Prows*. Unlike that case, in which all the parties were Utah or foreign citizens and the subject matter of the contract was entirely in Utah, here Washington is not the only state with contacts to this transaction. Plaintiff is an Ohio citizen.

ORDER * 8

*Davis* is also distinguishable.  In that case, the contract selected New Jersey law to govern the parties' rights.  399 F. Supp. 2d at 791. The court declined to apply New Jersey law in part because there were minimal contacts with New Jersey.  The extent of the contact of the parties or the transaction with New Jersey was that the contract was negotiated in a New Jersey hotel and the defendant's employee who delivered the to-be-signed contract worked in New Jersey.  *Id.*  But notably, the court found *both* that there was no substantial relationship with New Jersey *and* that there was no reasonable basis for choosing New Jersey law.  *Id.*

Although New York has no substantial relationship to the contract in this case, that is only half of the inquiry under section 187(2)(a). There must also be no other reasonable basis for the choice of that state's law in order for a court to refuse to apply it.

As comment (f) to section 187 makes clear, parties rarely, if ever, choose a state's law without good reason for doing so.  There are many situations where it would be reasonable to choose a state's law to govern a contract.  For example, the comment suggests that even if the parties and the contract have no substantial relationship to the state, the parties may choose the state's law if they are contracting in a country whose legal systems are strange and relatively immature.

Although the comment uses foreign countries as an example, the same rationale holds for states whose legal systems may be less developed than others with respect to the legal topic that encompasses the contract's subject matter.  This is true of New York as compared to Washington law when dealing with insurance swaps.  The ISDA Master Agreement allows parties to choose either New York or English law, because New York and

ORDER * 9

England are the primary markets for trading derivatives. According to Plaintiff, the ISDA Master Agreement defaults to New York law because it is highly advanced with regard to insurance swaps such as the one here. (Ct. Rec. 35 at 11-12.)

Furthermore, Plaintiff's expert stated that in his sixteen (16) years of working with derivatives, he had never seen a transaction or ISDA Master Agreement between United States companies governed by the law of any state besides New York. (Ct. Rec. 37 at 7.)

The choice of New York law was reasonable, and New York law governs. Therefore, this contract did not need to be in writing to be enforceable.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds as a matter of law that this contract was enforceable, and therefore that whether the contract was breached is a disputed fact issue. For this reason, Defendant is not entitled to summary judgment.

## C.   Attorney's Fees and Costs

Defendant also seeks attorney's fees and costs to which it argues it is entitled under the doctrine of Mutuality of Remedy. (Ct. Rec. 26 at 12-13). Because Defendant's motion is denied, it is not entitled to attorney's fees and costs.

### III. Conclusion

Accordingly, **IT IS HEREBY ORDERED**: Defendant's Motion for Partial Summary Judgment **(Ct. Rec. 23)** is **DENIED**.

ORDER * 10

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and distribute copies to counsel.

**DATED** this _____16th_____ day of March 2010.


_____S/ Edward F. Shea_____

EDWARD F. SHEA
United States District Judge

Q:\Civil\2009\162.SJ.wpd

ORDER * 11